ALEXANDER B. CVITAN (SBN 81746),
Email: alc@rac-law.com
J. DAVID SACKMAN (SBN 106703)
Email: jds@rac-law.com
MARSHA M. HAMASAKI (SBN 102720),
Email: marshah@rac-law.com, Members of
REICH, ADELL & CVITAN, A Professional Law Corporation
3550 Wilshire Boulevard, Suite 2000
Los Angeles, California 90010-2421
Telephone: (213) 386-3860, Facsimile: (213) 386-5583

Attorneys for Plaintiff Construction Laborers Trust
Funds for Southern California Administrative Co.

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSTRUCTION LABORERS TRUST FUNDS FOR SOUTHERN CALIFORNIA ADMINISTRATIVE COMPANY, a Delaware limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>MORROW-MEADOWS CORPORATION, a California corporation; AMERICAN CONTRACTORS INDEMNITY COMPANY, a California corporation,<br><br>Defendants. | Case No: 2:16-cv-07454-MWF-AS<br><br>[PROPOSED] STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW [Fed. R. Civ. P. 56(d); Local Rule 56-1]<br><br>Hearing Date: March 27, 2017<br>Time: 10:00 a.m.<br>Place: Courtroom 5A, 5th Floor<br>350 W. 1st Street<br>Los Angeles, California 90012 |

The Court, having heard Plaintiff's Motions for Partial Summary Judgment Compelling an Audit, and after considering all of the evidence and argument presented by the parties, finds the following facts to be without substantial controversy and makes the following conclusions of law based on these facts.

# I. UNCONTROVERTED FACTS

The court finds the following findings of fact to be without material controversy:

1. This action was brought by a fiduciary administrator on behalf of employee benefit plans to collect contributions allegedly due such plans, to compel an employer to submit its records for a complete audit allegedly in accordance with the terms and conditions of the plans, the collective bargaining agreement between the employer and a labor organization. [Complaint and Answer ¶ 1].[1/]

## PARTIES

2. Plaintiff is an administrator and agent for collection of several employee benefit plans, and a fiduciary as to those plans, including the Laborers Health And Welfare Trust Fund For Southern California, Construction Laborers Pension Trust For Southern California, Construction Laborers Vacation Trust For Southern California, Laborers Training And Re-Training Trust Fund For Southern California, Fund For Construction Industry Advancement, Center For Contract Compliance, Laborers Contract Administration Trust Fund For Southern California, Laborers' Trusts Administrative Trust Fund For Southern California, And Southern California Partnership For Jobs ("Trust Funds"). Each are express trusts and were created by written agreements and are employee benefit plans within the meaning of ERISA § 3(3), 29 U.S.C. § 1002(3), and multi-employer plans within the meaning of ERISA § 3(37)(A), 29 U.S.C. § 1002(37)(A). The Trust Funds exist pursuant to LMRA § 302(c)(5), 29 U.S.C. § 186(c)(5), and ERISA. The Plaintiff's principal place of business is in, and the Trust Funds' are administered in the County of Los Angeles,

---

1/ Citations to the Complaint (Docket No. 1) and Answer of Defendant Morrow-Meadows Corporation (Docket No. 11) are to those facts admitted in that answer.

State of California. [Complaint and Answer ¶ 2].

3. Defendant, MORROW-MEADOWS CORPORATION ("Employer") is a corporation organized and existing under and by virtue of the laws of the State of California, and is duly licensed to engage in business in the State of California in an industry affecting interstate commerce, with its principal place of business in the County of Los Angeles, State of California. [Complaint and Answer ¶ 3].

4. Defendant AMERICAN CONTRACTORS INDEMNITY COMPANY (Surety) is a California corporation, licensed and authorized to perform and transact surety business in the State of California, with its California principal place of business in the City of Los Angeles, State of California. [Complaint and Answer ¶ 4].

OTHERS

5. The Southern California District Council of Laborers and its Affiliated Local Unions (Union) was and is a labor organization representing employees in industries affecting commerce. The Union is not a party to this action. [Complaint and Answer ¶ 5].

AGREEMENTS

6. At all relevant times, the Employer has been bound to collective bargaining agreements with the Union, covering certain employees of the Employer in California, which, among other things, incorporates by reference, the Union's Master Labor Agreements (MLA). [Complaint and Answer ¶ 6]. The "Short Form" Agreement signed by the Employer is Exhibit 1, and the current MLA for 2015-2018 is Exhibit 4 to the Declaration of Richard Quevedo (Quevedo Decl). [Quevedo

Declaration ¶ 8].

7. The MLA, in turn, adopts and incorporates the terms and conditions of the various Trust Agreements of the Trust. [Complaint and Answer ¶ 7]. Those collective bargaining agreements with the Union, including the MLA, together with the Trust Agreements, will hereinafter collectively referred to as "Agreements." Provisions of those agreements regarding audits are reproduced as Exhibits 7-13 to the Quevedo Declaration. [Quevedo Declaration ¶ 9].

8. The Agreements obligate the Employer to pay fringe benefit contributions at the rates set forth in the Agreements for each hour worked (or paid for) by employees performing work covered by the Agreements ("Covered Work"). [Complaint and Answer ¶ 8; Quevedo Decl ¶ 10].

9. Under the terms of the MLA, employers, including the Employer, agree to subcontract Covered Work only to entities that are signatory to a collective bargaining agreement with the Union. [Complaint and Answer ¶ 11; Quevedo Decl ¶ 11; MLA (Ex. 4) Art. V at pp. 19-23].

10. Article XXV.J of the MLA (Ex. 4) provides that:

"All employees shall be covered by this Agreement and the provisions applicable to Trust Funds. The Trustees shall have authority to audit Contractor records to determine the appropriate contributions and shall have specific authority to examine the Contractor's records, including but not limited to all payroll records (including certified payroll records, electronic payroll records, and all records reflecting payments to trust funds other than the Laborer Trust Funds of Southern California Federal W-2 Forms, Forms 1099 and 1096, Quarterly State Tax returns, and time cards), all cash disbursement ledgers, all canceled checks, check registers, invoices and bank checking account statements, the scope of work portion of all contracts and subcontracts between general contractors and subcontractors. If requested by the Trusts, the Contractor shall provide payroll breakdown by job, and shall provide the job location, legal description of the jobsite property if known, the owner of job location, the name and address of the entity for which the Contractor is working, the contact telephone number for the job, the names and social security numbers of the employees working on the job, the number of hours

worked by each employee on the job, all preliminary notices, mechanic liens and stop notices on the job, other relevant job location information requested by the Trusts and certification of workers compensation coverage. The Trustees may file suit to enforce this obligation, and, if successful, shall recover their attorneys' fees and costs, whether or not the audit reveals a delinquency. [Quevedo Decl Ex. 4 at p. 54].

## AUDIT

11. Plaintiff requested an audit of the books and records of the Employer for the period of September 2013 through January 2016 ("Audit Period"). [Complaint and Answer ¶ 15; Quevedo Decl ¶ 13].

12. In response to the audit request, the Employer provided records as to its subcontractors, and payroll records as to the one employee it contends is the only Laborer covered by the MLA. The Employer refused to provide payroll records as to any other employees, whom it contends were "assigned" to other crafts, and contributions made to other funds – in particular, to funds associated with locals of the International Brotherhood of Electrical Workers (IBEW Funds). [Quevedo Declaration ¶ 14; Quevedo Decl Ex. 20].

13. Based on the limited records provided, Plaintiff's auditor determined that $3,782.76 contributions for work performed, and $49,509.03 contributions for subcontracting damages, are due for the Audit Period. [Complaint and Answer ¶ 17]. On May 19, 2016, Plaintiff sent those audit findings, based on the records produced so far (Partial Audit), to the Employer. [Complaint and Answer ¶ 17]. A copy of those findings, as sent to the Employer is Exhibit 36 to the Quevedo Declaration. [Quevedo Declaration ¶ 15]. The Employer contests these findings. [Ex. 20].

14. In the letter of May 19, 2016 accompanying the Partial Audit (Ex. 36), Plaintiff requested the "balance of payroll not yet reviewed from September 1, 2013-

Present." The Employer did not provide those additional records requested. [Complaint and Answer ¶ 25]. On June 6, 2016, counsel for the Employer responded to the auditor. A copy of that June 6, 2016 letter is Exhibit 20 to the Quevedo Declaration. [Quevedo Decl ¶ 16].

15. On June 10, 2016, counsel for Plaintiff wrote to the Employer, again requesting a "full audit." [Declaration of J. David Sackman (Sackman Decl) ¶ 2; Sackman Decl Ex. 21]. Subsequently, Plaintiff and the Employer, through their counsel, exchanged correspondence regarding the audit, without resolution. The upshot of this exchange is that, while the Employer offered to produce its reports to IBEW Funds *without* employee information, it refused to provide any payroll records, other than that of the one employee (Eric Chew) which the Employer contends is the only "Laborer." [Sackman Decl ¶¶ 3-4; Ex.s 23-29].

16. Without the other records requested and denied, particularly full payroll for all employees, certified payroll records and project information, the auditors have no way of assessing whether or not these employees performed work covered by the Laborers MLA. Without employee information in reports to the IBEW Funds, or payroll records of the Employer to compare them to, Plaintiff's auditors have no way of verifying the Employer's contention that contributions were indeed made for all hours worked by those employees. [Quevedo Decl ¶ 17-19].

17. The documents which Plaintiff's auditors still need, in order to complete the audit, are:

A. All payroll and employee documents during the Audit Period including, but not limited to, Employer's payroll journals, employees earning records, certified payrolls, payroll check books and stubs, canceled payroll checks, payroll time cards, state and federal payroll tax returns, labor distribution

journals, any other documents reflecting the number of hours which Employer's employees worked, their names, social security numbers, addresses, job classifications and identification of the projects on which the employees performed their work, for all employees.

B. Scope of work provisions in the Employer’s contracts or subcontracts with its customers, in which work was performed by employees of the Employer during the Audit Period.

C. Invoices to customers, and Schedule of Values (such as AIA Document G703tm ) of the Employer for work performed by employees of the Employer during the Audit Period.

C. All collective bargaining agreements between Employer and any trade union in effect at any time during the Audit Period.

D. All reports or statements submitted to any employee benefit plan, and a copy of the check(s) to such plan(s), for its Employees for work performed during the Audit Period.

[Quevedo Decl ¶ 18].

18. The above must be provided in unredacted form in order to be useful. Plaintiff, as agent for the Trust Funds, is already bound to maintain privacy of individual employee information. [Quevedo Decl. ¶ 19].

19. This lawsuit was filed on October 5, 2016. [Docket No. 1]. As of the filing of this motion, the Employer has still not provided the remainder of the payroll records requested. In particular, the Employer has not provided payroll records for any employee other than the one employee (Eric Chew) it concedes is covered by the MLA. [Sackman Decl ¶ 5].

## II. CONCLUSIONS OF LAW

The Court makes the following conclusions of law, based on the aforementioned uncontroverted facts:

1. This action is brought to collect delinquent contributions from the Employer pursuant to the Employee Retirement Income Security Act (ERISA) §§ 515 and 502(g)(2), 29 U.S.C. § 1145 and 1132(g)(2).

2. This Court has jurisdiction under Sections 502 and 515 of ERISA, 29 U.S.C. §§ 1132 and 1145 and Section 301(a) of the Labor Management Relations Act, (LMRA), 29 U.S.C. § 185(a). Venue is proper in this district in that the plans are administered, the performance and breach took place in this district.

3. The Employer is bound to certain collective bargaining agreements, applicable to particular projects, which require contributions to the Trust Funds as part of the compensation of its employees performing covered work on those projects.

4. Those agreements expressly incorporate the terms of the Trust Agreements of the various Trust Funds. *See* *Santa Monica Culinary Welfare Fund v. Miramar Hotel Corp.*, 920 F.2d 1491, 1494 (9th Cir. 1990), *cert. denied*, 501 U.S. 1232 (1991) (employer bound to trust agreements by participating in trust funds, even if the bargaining agreement did not expressly incorporate trust agreements).

5. The bargaining agreements and the trust agreements each has language requiring, not only that contributions be paid, but that the Employer must submit accurate reports to the Trust Funds, and provide the Trust Funds with broad authority to audit the Employer to verify if those reports and contributions are accurate. This

includes "all payroll records (including certified payroll records, electronic payroll records and all records reflecting payments to trust funds other than the Laborers Trust Funds of Southern California . . . ." [MLA Art. XXV.J, *emphasis added*). The MLA further provides that "The Trustees may file suit to enforce this obligation [to allow an audit], and, if successful, shall recover their attorneys' fees and costs, whether or not the audit reveals a delinquency." [Id.]

6. Plaintiff here seeks summary judgment as to the Second Claim for Relief for an Audit Order. In order to establish this Claim, Plaintiff only needs to show that the contract or trust agreements provide that authority, and do not need to show any particular "cause" to do so. *See Santa Monica Culinary Welfare Fund v. Miramar Hotel*, 920 F.2d 1491, 1495. Here, there is no question that Plaintiff has established the authority to conduct an audit in both the bargaining agreements and trust agreements to which the Employer is subject to.

7. ERISA directs that, in an action for delinquent contributions, courts "shall" award the trust funds "such other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2)(E). Injunctive relief is further authorized by 29 U.S.C. § 1132(a)(3). The Supreme Court has made it clear that this authorizes courts to provide injunctive relief requiring employers to submit to an audit, as Plaintiff seeks here in the Second Claim for Relief. *See Central States, Southeast and Southwest Areas Pension Fund v. Central Transport Inc.*, 472 U.S. 559, 105 S.Ct. 2833, 86 L.Ed.2d 447 (1985).

8. The Employer does not contest the right of the Trust Funds to conduct an audit in general, but takes issue with the scope of the audit sought by Plaintiff. Yet the audit sought here is within the scope of the audit the Employer agreed to allow in the MLA. In determining the allowable scope of an audit, this Court must consider

"the elementary principle that for an auditor to verify a certain selection decision, he must refer to a universe broader than the selection itself" which the Supreme Court approved of in Central States, *supra*. The Court there quoted from the American Institute of Certified Public Accountants, Codification of Statements on Auditing Standards, AU § 350.17, p. 223 (1985), which stated:

> "When planning a particular sample, the auditor should consider the specific audit objective to be achieved and should determine that the audit procedure, or combination of procedures to be applied will achieve that objective. The auditor should determine that the population from which he draws the sample is appropriate for the specific audit objective. *For example, an auditor would not be able to detect understatements of an account due to omitted items by sampling the recorded items. An appropriate sampling plan for detecting such understatements would involve selecting from a source in which the omitted items are included.*" Central States, 472 U.S. 559, 567 (*emphasis added by Supreme Court*).

9. Here, the Employer argues that the Trust Funds have no right to audit the records of those employees it contends are not covered by the MLA. This is the same argument made by the employer in the Central States case. This Court rejects this argument for the same reason stated by the Supreme Court – in order to verify the hours of covered employees, the auditor "must refer to a universe broader than" the employees the Employer admits are covered. Central States, 472 U.S. 559, 567. Whether or not these employees are within the scope of the Laborer's MLA is an issue this Court cannot, and will not, address, unless and until the audit is completed and the relevant evidence is properly presented. At this point, the Court only decides that the Employer must be required to produce ALL documents relevant to the audit, not limited to particular employees, for the Audit Period of September 2013 through January 2016.

10. In a similar vein, the Employer also argues that this is really a jurisdictional dispute, and that the contractual mechanisms for resolving such disputes must be exhausted. Again, no jurisdictional dispute exists, because no claim has been made. In addition, the Supreme Court has rejected the argument that trust funds must exhaust contractual procedures of the collective bargaining agreement to which they are not a party to. *Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364, 104 S.Ct. 1844, 80 L.Ed.2d 366 (1984).

11. The Employer also raises legitimate privacy concerns in the records necessary for this audit. These contain personal information of employees, including social security numbers and addresses. On the other hand, all this information is necessary for the audit. Indeed, the ultimate goal of this entire proceeding is to provide benefits to some of these persons, which can only be done if they are properly identified. There are already protections in place to assure that this information remains private. Plaintiff and the Trust Funds are already subject to legal constraints in the use and disclosure of personal information. *See* ERISA § 106(b), 29 U.S.C. § 1026(b), incorporating 26 U.S.C. § 6103; 45 C.F.R. § 164.512 (health information); *Los Angeles Unified Sch. Dist. v. Trustees of the S. California IBEW-NECA Pension Plan*, 187 Cal. App. 4th 621, 632, 114 Cal. Rptr. 3d 440, 448 (2nd Dist. 2010) (trust funds entitled to unredacted certified payroll reports, since "Trustees and the entities they do business with are required to protect the employees' personal information from public disclosure"). In addition, Rule 5.2 of the Federal Rules of Civil Procedure, and Local Rule 5.2-1 of this Court, prohibit this information from becoming public, while allowing the parties access to the information for the legitimate purposes of this litigation. The Employer has not shown why these existing legal constraints, applicable to both the parties and their counsel, are not adequate to protect the privacy interests of employees.

12. Under the MLA, Plaintiff is entitled to recover fees and costs in a suit, such as this, to enforce this audit obligation, "whether or not the audit reveals a delinquency." Fees and costs are also authorized b ERISA §§ 502(g)(1) and 502(g)(2)(D), 29 U.S.C. §§ 1132(g)(1) and 1132(g)(2)(D). Pursuant to these provisions, and pursuant to the MLA provision, the Court finds Plaintiff is the prevailing part as to the Second Claim, and is entitled to fees and costs for the prosecution of this Motion and the enforcement (if necessary) of this Order, regardless of the outcome of the other two claims for relief.

Pursuant to Fed. R. Civ. P. 56(d), the Uncontroverted Facts here shall be deemed established for purposes of trial, and the Uncontroverted Facts and Conclusions of Law shall be binding on further proceedings in this case, through trial.

The Court therefore enters the following interlocutory order:

## III. ORDER

IT IS THEREFORE ORDERED:

1. That Defendant Morrow-Meadows Corporation. (Employer), its officers, directors, employees, agents, and all persons acting by, through, or in concert with the Employer be compelled to forthwith submit to an audit of Employer's payroll and business records and that Employer produce the following payroll and business records for the time period of September 2013 through January 2016 (Audit Period), to the Plaintiff Construction Laborers Trust Funds For Southern California Administrative Company (Trust Funds) or their designated agent for inspection, examination and copying:

1.1. All payroll and employee documents during the Audit Period including, but not limited to, Employer's payroll journals, employees earning records,

certified payrolls, payroll check books and stubs, canceled payroll checks, payroll time cards, state and federal payroll tax returns, labor distribution journals, any other documents reflecting the number of hours which Employer's employees worked, their names, social security numbers, addresses, job classifications and identification of the projects on which the employees performed their work, for all employees.

1.2. Scope of work provisions in the Employer's contracts or subcontracts with its customers, in which work was performed by employees of the Employer during the Audit Period.

1.3 Invoices to customers, and Schedule of Values (such as AIA Document G703[tm] ) of the Employer for work performed by employees of the Employer during the Audit Period.

1.4. All collective bargaining agreements between Employer and any trade union in effect at any time during the Audit Period.

1.5. All reports or statements submitted to any employee benefit plan, and a copy of the check(s) to such plan(s), for its Employees for work performed during the Audit Period.

2. The above documents shall be produced in un-redacted form. All parties, their agents and employees, shall be subject to all applicable laws and regulations regarding the confidentiality of personal information in those documents. Counsel shall be subject to Fed. R. Civ. P. 5.2 and Local Rule 5.2-1 in the handling of such documents.

3. An ORDER TO SHOW CAUSE is set for hearing on ___________, at ______, in Courtroom 5A of this Court, located at 350 W. 1st Street, Los Angeles, California, regarding compliance with this Order. Counsel shall file a joint report regarding compliance no later than __ days before the hearing.

4. This Order shall be effective immediately. Within five court days of the issuance of this Order and service through the CMF-ECF system, all counsel shall file a Proof of Service of this Order on their respective clients. The Failure to so serve this Order and file this Proof of Service may subject counsel to sanctions from the Court.

IT IS SO ORDERED:

Date: ______________

______________________________
Hon. Michael W. Fitzgerald
United States District Court Judge

SUBMITTED BY:

Dated: February 24, 2017

ALEXANDER B. CVITAN,
J. DAVID SACKMAN, and
MARSHA M. HAMASAKI, Members of
REICH, ADELL & CVITAN,
A Professional Law Corporation

By: /s/ J. David Sackman
J. DAVID SACKMAN
Attorneys for Plaintiff