ALEXANDER B. CVITAN (SBN 81746)
Email: alc@rac-law.com
J. DAVID SACKMAN (SBN 106703)
Email: jds@rac-law.com
MARSHA M. HAMASAKI (SBN 102720),
Email: marshah@rac-law.com, Members of
REICH, ADELL & CVITAN, A Professional Law Corporation
3550 Wilshire Boulevard, Suite 2000
Los Angeles, California 90010-2421
Telephone: (213) 386-3860, Facsimile: (213) 386-5583

Attorneys for Plaintiff Construction Laborers Trust
Funds for Southern California Administrative Co.

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

CONSTRUCTION LABORERS TRUST FUNDS FOR SOUTHERN CALIFORNIA ADMINISTRATIVE COMPANY, a Delaware limited liability company,

Plaintiff,

vs.

MORROW-MEADOWS CORPORATION, a California corporation; AMERICAN CONTRACTORS INDEMNITY COMPANY, a California corporation,

Defendants.

Case No: 2:16-cv-07454-MWF-AS

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

**[Fed. R. Civ. P. 56(a)]**

Date: March 27, 2017
Time: 10:00 a.m.
Place: Courtroom 5A, 5th Floor
350 W. 1st Street
Los Angeles, California 90012

# I. INTRODUCTION

This action was brought to complete an audit of an employer[1/] by employee benefit funds[2/] (Second Claim), collect the delinquent contributions and damages found so far, plus whatever may be found in the audit (First Claim), and to recover part of those contributions from the employer's license bond[3/] (Third Claim). This motion is for summary judgment as to the Second Claim – for an injunction ordering the Employer to produce the documents needed to complete the audit.

The Employer refuses to provide payroll for any employee other than the one it acknowledges is covered by its collective bargaining agreement with the Southern California District Council of Laborers (Union). It contends that all its other employees are covered by other collective bargaining agreements with locals of the International Brotherhood of Electrical Workers (IBEW). Yet it refuses to provide the documents needed even to verify that contention.

We expect the Employer to raise issues as to its speculation on the results of the audit it refuses to allow. But unless and until that audit can be completed, those issues are not before the Court. The only question before the Court in this motion is whether the Trust Funds can complete their audit. There is no factual dispute, and the law is clear, that the audit sought must be compelled.

---

1/ Defendant Morrow-Meadows Corporation (Employer).

2/ Laborers Health And Welfare Trust Fund For Southern California, Construction Laborers Pension Trust For Southern California, Construction Laborers Vacation Trust For Southern California, Laborers Training And Re-Training Trust Fund For Southern California, Fund For Construction Industry Advancement, Center For Contract Compliance, Laborers Contract Administration Trust Fund For Southern California, Laborers' Trusts Administrative Trust Fund For Southern California, And Southern California Partnership For Jobs (collectively "Trust Funds").

3/ Issued by Defendant American Contractors Indemnity Company (Surety).

## II. SUMMARY OF FACTS[4/]

Plaintiff Construction Laborers Trust Funds for Southern California Administrative Company, LLC (CLTF) appears here as a fiduciary administrator for the Trust Funds. The Trust Funds are employee benefit plans within the meaning of the Employee Retirement Income Security Act (ERISA) § 3(3), 29 U.S.C. § 1002(3), and multi-employer plans within the meaning of ERISA § 3(37)(A), 29 U.S.C. § 1002(37)(A), and joint labor-management trusts under the Labor Management Relations Act (LMRA) § 302(c)(5), 29 U.S.C. § 186(c)(5). [SUF ¶¶ 1 and 2].

Defendant Employer is signatory to collective bargaining agreements with the Southern California District Council of Laborers and its Affiliated Local Unions (Union)[5/] which require the Employer to pay contributions to the Trust Funds "for each hour worked or paid for all classifications contained in" the MLA. [SUF ¶¶ 5-8; *see eg.*, MLA (Ex. 4) Art. XIX.C.1 at p. 41].[6/] The MLA, in turn, adopts and incorporates the terms and conditions of the various Trust Agreements of the Trust Funds. [SUF ¶ 7].

The provision of the MLA most important to this motion is Article XXV.J, which provides that:

> "The Trustees shall have authority to audit Contractor records to determine the appropriate contributions and shall have specific authority to examine the Contractor's records, including but not limited to **all payroll records** (including certified payroll records, electronic payroll records, and **all records reflecting**

---

4/ Most of the facts here are stated in the accompanying Proposed Statement of Uncontroverted Facts (SUF).

5/ The "Short Form" Agreement originally signed by the Employer is Exhibit 1, and the current Master Labor Agreement (MLA) for 2015-2018 is Exhibit 4 to the Declaration of Richard Quevedo (Quevedo Decl). [Quevedo Declaration ¶ 8].

6/ Unless indicated otherwise, citations are to the internal pagination of the document.

> **payments to trust funds other than the Laborer Trust Funds of Southern California** Federal W-2 Forms, Forms 1099 and 1096, Quarterly State Tax returns, and time cards), all cash disbursement ledgers, all canceled checks, check registers, invoices and bank checking account statements, the **scope of work portion of all contracts and subcontracts** between general contractors and subcontractors. If requested by the Trusts, the Contractor shall provide payroll breakdown by job, and shall provide the job location, legal description of the jobsite property if known, the owner of job location, the name and address of the entity for which the Contractor is working, the contact telephone number for the job, the **names and social security numbers of the employees working on the job**, the number of hours worked by each employee on the job, all preliminary notices, mechanic liens and stop notices on the job, other relevant job location information requested by the Trusts and certification of workers compensation coverage. **The Trustees may file suit to enforce this obligation, and, if successful, shall recover their attorneys' fees and costs, whether or not the audit reveals a delinquency**. [MLA (Ex. 4) at p. 54, *emphasis added*].

Plaintiff requested an audit of the books and records of the Employer for the period of September 2013 through January 2016 ("Audit Period"). [SUF ¶ 11]. In response to the audit request, the Employer provided records as to its subcontractors, and payroll records as to the one employee it contends is the only Laborer covered by the MLA. The Employer refused to provide payroll records as to any other employees. [SUF ¶ 12]. Based on the limited records provided, Plaintiff's auditor issued a "Partial Audit," finding discrepencies as to the one employee whose payroll the auditor was allowed to review (Eric Chew) and subcontracting damages, along with a cover letter stating that "Per the terms of the Master Labor Agreement, we are still seeking review the balance of payroll not yet reviewed from September 1, 2013-Present." [SUF ¶ 13; Quevedo Decl Ex. 36].

The Employer, through its counsel, disputed the findings of the Partial Audit and refused to provide the remainder of the payroll, because "All other relevant work was performed by IBEW [International Brotherhood of Electrical Workers] electricians and was reported to the IBEW Trust Funds." [SUF ¶ 14; Quevedo Decl Ex. 20]. Counsel for the Employer and counsel for the Trust Funds then exchanged letters and emails over the audit. [SUF ¶ 15; Declaration of J. David Sackman (Sackman Decl) ¶ 3].[7/] The gist of this exchange was that the Employer would allow CLTF to only "review a summary of labor hours worked from its accounting system (without employee information), Union Reports and check copies for what was reported and paid to the Union(s)" and it will not "provide payroll records for employees that are not laborers" according to the Employer. [Sackman Decl Ex. 27]. According to the Employer, the only employee who was a laborer was Eric Chew. [Id. Ex. 25].

This lawsuit was filed on October 5, 2016. It contains three claims for relief:

First: To collect the contributions and damages found in the Partial Audit, plus any additional contributions found, once a full audit is completed;

Second: To compel the Employer to allow a full audit; and

Third: To enforce a claim on the license bond of the Employer, issued by Surety.[8/]

As of the filing of this motion, the Employer has still not provided the remainder of the payroll records requested. In particular, the Employer has not provided payroll records for any employee other than the one employee (Eric Chew) it concedes is covered by the MLA. [Sackman Decl ¶ 5]. Therefore, this motion is brought for summary judgment as to the Second Claim only, to compel the full audit, so we can proceed to litigate the other two claims.

---

7/ This exchange is reproduced as Exhibits 23-29 of the Sackman Declaration.

8/ The Third Claim is brought under California Bus. & Prof. Code § 7071.11, under this Court's supplemental jurisdiction of 28 U.S.C. § 1367(a).

## III. ARGUMENT

### A. THE COURT HAS AUTHORITY TO ENTER AN INTERLOCUTORY PARTIAL SUMMARY JUDGMENT ENJOINING THE EMPLOYER TO PROVIDE THE RECORDS TO COMPLETE THE AUDIT

This motion is for partial summary judgment, for injunctive relief on the Second Claim for Relief in the Complaint, only. The relief sought here is authorized by both the statute, Federal Rules, and the applicable Agreements.

In an action for delinquent contributions arising under ERISA § 515, 29 U.S.C. § 1145,[9/] the statute directs that the courts "shall" award the trust funds "such other legal or equitable relief as the court deems appropriate." ERISA § 502(g)(2)(E), 29 U.S.C. § 1132(g)(2)(E). Injunctive relief is further authorized by ERISA § 502(a)(3)(A), 29 U.S.C. § 1132(a)(3)(A).[10/] The Supreme Court has made it clear that this authorizes courts to provide injunctive relief requiring employers to submit to an audit, as Plaintiff seeks here in the Second Claim for Relief. *See* *Central States, Southeast and Southwest Areas Pension Fund v. Central Transport Inc.*, 472 U.S. 559, 105 S.Ct. 2833, 86 L.Ed.2d 447 (1985).

Under Fed. R. Civ. P. 56(a), "A party may move for summary judgment," not just on the entire action, but as to a particular "claim or defense — or the part of each claim or defense" which "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

---

9/ "Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."

10/ "A civil action may be brought . . . by a . . . fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan."

matter of law." Here, Plaintiff moves for summary judgment as to the Second Claim, which is for injunctive relief, authorized by ERISA §§ 502(a)(3)(A) and 502(g)(2)(E).

Finally, this relief is specifically authorized by the collective bargaining agreements the Employer agreed to. The MLA provides that "The Trustees may file suit to enforce this obligation [to allow an audit], and, if successful, shall recover their attorneys' fees and costs, whether or not the audit reveals a delinquency." [MLA (Ex. 4) Art. XXV.J at p. 54].

The same type of motion as here was granted, under the same collective bargaining agreement, by Judge Dolly Gee of this Court, in *Construction Laborers Trust Funds for So. Cal. Admin. Co. v. Ground Service Technology, Inc.*, C.D. Cal. No. 13cv00414DMG.[11/] As here, that case involved a recalcitrant employer who refused to provide all the records necessary to complete the audit. As there, the Agreements clearly authorize the scope of audit sought. Here too, summary judgment should be granted on this Claim, ordering this Employer to produce all records required.

## B. THE EMPLOYER IS OBLIGATED TO PROVIDE RECORDS AS TO ALL EMPLOYEES, NOT JUST THOSE IT DEEMS COVERED

There can be no doubt that the Agreements authorize the full audit of all the records sought by the Plaintiff here. The MLA gives the Trust Funds authority to audit "all payroll records," not just those the Employer believes are relevant. [MLA (Ex. 4) Art. XXV.J at p. 54, *emphasis added*]. This includes all of the items on the list which we seek an order for here,[12/] including "all records reflecting payments to trust

---

11/ A copy of that decision by Judge Gee, Docket No. 113 in that case, was attached to one of the communications between counsel. [Sackman Decl Ex. 28].

12/ That list of documents still needed is in the Proposed Judgment lodged with this motion, taken from paragraph 18 of the Quevedo Declaration.

funds other than the Laborer Trust Funds." [Id.]. Further support for this audit authority is found in the various Trust Agreements, Exhibits 7-13 to the Quevedo Declaration. [Quevedo Declaration ¶ 9].

With this authority, Plaintiff does not need to show "cause" to obtain an audit from an employer. *See Santa Monica Culinary Welfare Fund v. Miramar Hotel Corp.*, 920 F.2d 1491, 1495 (9th Cir. 1990), *cert. denied*, 501 U.S. 1232 (1991) ("The fact that the Trustees have no existing claim for contribution, nor any information that [the employer] may not have made the required contributions is not an obstacle to the Trustees' right to audit"). Indeed, the Department of Labor encourages fiduciaries, such as Plaintiff, to conduct random audits in order to avoid the "prohibited transaction" of allowing employers to keep contributions. *See* Dept. of Labor Prohibited Transaction Class Exemption 76-1, 41 F.R. 12740-12746 (3/26/1976).

The Employer does not contest the right of the Trust Funds to conduct an audit in general, but seeks to limit the scope of the audit to the single employee it concedes is a "laborer" performing "covered work." This argument, that Plaintiff has "no right to examine any records of noncovered employees" is the exact same argument made by the employer in the *Central States* case. 472 U.S. 559, 563. The Supreme Court rejected this argument, based on "the elementary principle that for an auditor to verify a certain selection decision, he must refer to a universe broader than the selection itself." 472 U.S. at 567. The Court there quoted from the American Institute of Certified Public Accountants, Codification of Statements on Auditing Standards, AU § 350.17, p. 223 (1985), which stated:

> "When planning a particular sample, the auditor should consider the specific audit objective to be achieved and should determine that the audit procedure, or combination of procedures to be applied will achieve that objective. The auditor should determine that the population from which he draws the sample is appropriate for the specific audit objective. *For example, an auditor would not be able to detect understatements of an account due to omitted items by*

*sampling the recorded items. An appropriate sampling plan for detecting such understatements would involve selecting from a source in which the omitted items are included*." 472 U.S. 559, 567 (*emphasis added by Supreme Court*).

The scope of the audit sought here is specifically authorized by the MLA and Trust Agreements, as described above. The Declaration of Richard Quevedo further explains why this scope of documents are needed in this particular case. [Quevedo Decl ¶¶ 18-19]. According to the Supreme Court, this "determination that the trust documents authorize their access to the records here in dispute has significant weight, . . ." _Central States_, *supra*, 472 U.S. at 568.

Among other things, the scope of the audit sought here is necessary to determine the facts of the Employer's argument that all these other employees were covered by agreements with locals of the IBEW, and those contributions paid into those funds. Without complete employee information in reports to the IBEW Funds, or all payroll records of the Employer to compare them to, Plaintiff's auditors have no way of verifying the Employer's contention that contributions were indeed made for all hours worked by those employees. Without the other records requested and denied, particularly full payroll, certified payroll records and project information, the auditors have no way of assessing whether or not these employees performed work covered by the Laborers MLA. [Quevedo Decl ¶ 17].[13/]

---

13/ The Employer does raise legitimate privacy concerns in the personal information of employees. However, there are already adequate legal protections covering this information. Plaintiff and the Trust Funds are already subject to legal constraints in the use and disclosure of personal information. [Quevedo Decl ¶ 19]. *See* ERISA § 106(b), 29 U.S.C. § 1026(b), incorporating 26 U.S.C. § 6103; 45 C.F.R. § 164.512 (health information); _Los Angeles Unified Sch. Dist. v. Trustees of the S. California IBEW-NECA Pension Plan_, 187 Cal. App. 4th 621, 632, 114 Cal. Rptr. 3d 440, 448 (2nd Dist. 2010) ("Trustees and the entities they do business with are required to protect the employees' personal information from public disclosure"). Rule 5.2 of the Federal Rules of Civil Procedure, and Local Rule 5.2-1 of this Court, limit the use of this information by counsel. The Employer has not shown the need for any additional protections.

## C. THE ISSUES RAISED BY THE EMPLOYER AS TO ALLEGEDLY NON-COVERED EMPLOYEES ARE NOT BEFORE THE COURT

We expect that the Employer will argue that the employees whose records we seek to audit are covered by IBEW agreements, for whom contributions were already paid, and that this is really a jurisdictional dispute which should be processed through jurisdictional dispute mechanisms. Not only do these arguments have no merit, they are not even before this Court in this motion.

The Trust Funds have not made any claim as to workers allegedly covered by an IBEW agreement. At this point, we are only trying to complete the audit. The Employer cannot block that audit because of issues arising from what the audit findings may or may not be. It certainly cannot block Plaintiffs from finding out whether such issues even exist.[14/]

Even if the Employer's fears come true, and the Trust Funds claim contributions for work allegedly also covered by IBEW agreements, that would not make this a jurisdictional dispute over the *assignment* of work *to be done in the future*, but merely a contract claim for work *already performed*. *See* *W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 461 U.S. 757, 768–69, 103 S. Ct. 2177, 76 L. Ed. 2d 298 (1983) (damages can be awarded under a CBA for past work, even if it is arguably inconsistent with injunction over future work).

Nor can Plaintiff or the Trust Funds be required to exhaust contractual procedures which do not apply to them. That was exactly the argument made in

---

14/ For example, the Employer refuses to provide the information needed to verify its claim that contributions were made for certain employees to the IBEW funds. [Quevedo Decl ¶ 17]. Even if that fact is verified, there is authority for demanding contributions required by this agreement, even if the Employer already provided "substitute coverage" under another plan. *MacKillop v. Lowe's Mkt., Inc.*, 58 F.3d 1441, 1446 (9th Cir. 1995), *cert. denied*, 516 U.S. 1113 (1996). Again, such a demand has not been made, so this issue cannot be decided in this motion.

Schneider Moving & Storage Co. v. Robbins, 466 U.S. 364, 104 S.Ct. 1844, 80 L.Ed.2d 366 (1984), where the employer also sought to block an audit by trust funds, arguing that the dispute was subject to arbitration instead. "In the absence of evidence to the contrary, therefore, we will not infer that the parties to the two multiemployer trust funds intended to condition the trustees' enforcement authority on the arbitration procedures contained in petitioners' separate collective-bargaining agreements." 466 U.S. 364, 374.

## IV. CONCLUSION

The Employer has agreed, in the MLA, to a full audit of all its payroll records. Until that audit is completed, this case cannot proceed. It must therefore be ordered forthwith. Pursuant to the MLA, Plaintiff is entitled to recover fees and costs to enforce this audit obligation, "whether or not the audit reveals a delinquency." *See* ERISA §§ 502(g)(1) and 502(g)(2)(D), 29 U.S.C. §§ 1132(g)(1) and 1132(g)(2)(D). Summary judgment should therefore be ordered on the Second Claim, requiring a full audit, and allowing fees and costs to Plaintiff (to be determined) in bringing this motion. A Proposed Judgment and Statement of Uncontroverted Facts and Conclusions of Law to this effect is lodged with this motion.

Respectfully Submitted,

Dated: February 24, 2017

ALEXANDER B. CVITAN,
J. DAVID SACKMAN, and
MARSHA M. HAMASAKI, Members of
REICH, ADELL & CVITAN,
A Professional Law Corporation

By: /s/ J. David Sackman
J. DAVID SACKMAN
Attorneys for Plaintiff