ALEXANDER B. CVITAN (SBN 81746),
Email: alc@rac-law.com
J. DAVID SACKMAN (SBN 106703)
Email: jds@rac-law.com
MARSHA M. HAMASAKI (SBN 102720),
Email: marshah@rac-law.com, Members of
REICH, ADELL & CVITAN, A Professional Law Corporation
3550 Wilshire Boulevard, Suite 2000
Los Angeles, California 90010-2421
Telephone: (213) 386-3860, Facsimile: (213) 386-5583

Attorneys for Plaintiff Construction Laborers Trust Funds for Southern California Administrative Co.

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

CONSTRUCTION LABORERS TRUST FUNDS FOR SOUTHERN CALIFORNIA ADMINISTRATIVE COMPANY, a Delaware limited liability company,

Plaintiff,

vs.

MORROW-MEADOWS CORPORATION, a California corporation; AMERICAN CONTRACTORS INDEMNITY COMPANY, a California corporation,

Defendants.

Case No: 2:16-cv-07454-MWF-AS

**DECLARATION OF RICHARD QUEVEDO IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

Hearing
Date: March 27, 2017
Time: 10:00 a.m.
Place: Courtroom 5A, 5th Floor
350 W. 1st Street
Los Angeles, California 90012

DECLARATION OF RICHARD QUEVEDO

I, RICHARD QUEVEDO, declare as follows:

1. [IDENTITY] I am over eighteen years of age and am employed in the County of Los Angeles, State of California. The facts stated herein are within my personal knowledge and if called upon to testify I can truthfully and competently do so as to all matters herein contained.

2. [JOB CAPACITY] I am the Executive Director for the Construction Laborers Trust Funds For Southern California Administrative Company, LLC ("CLTF"), an administrative agent for collection and fiduciary to the Laborers Health And Welfare Trust Fund For Southern California, Construction Laborers Pension Trust For Southern California, Construction Laborers Vacation Trust For Southern California, Laborers Training And Re-Training Trust Fund For Southern California, Landscape Industry Promotion Fund, Center For Contract Compliance, Laborers Contract Administration Trust Fund For Southern California, Laborers' Trusts Administrative Trust Fund For Southern California, San Diego County Construction Laborers Pension Trust Fund And San Diego Construction Advancement Fund 2003; (hereinafter referred to collectively as "Trust Funds"). I have held this position since February 2003.

3. [ADMINISTRATOR] As the collection administrator of the Trust Funds, CLTF is responsible to the Board of Trustees of each of the Trust Funds for certain administrative functions. These functions include, but are not limited to, the processing of employer's contribution reports, and recording receipt of monies or delinquencies involved with the employer's monthly reports, apportioning the monies recovered to the appropriate Trust Funds, and verifying the amounts owed by

employers who are bound to the Trust Agreements establishing the Trust Funds, under Collective Bargaining Agreements with the Southern California District Council of Laborers and its affiliated Local Unions ("Union"). CLTF has the responsibility for all collection activity to ensure the employers' compliance with the reporting requirements of the Collective Bargaining Agreements and Trust Agreements and to obtain payment of any delinquent account. CLTF works with a co-administrator of the Trust Funds, Pacific Southwest Administrators ("PSWA") in handling of employer's accounts.

4. [JOB DUTIES] As the Executive Director of CLTF, my job duties include, but are not limited to the management and supervision of all collection activities of CLTF on behalf of the Trust Funds. I supervise the audit staff which has the responsibility to ensure that employers signatory to the collective bargaining agreements with the Union have fully complied with the reporting requirements of the agreements; the accounting staff, which, among other things, has the responsibility to ensure that all monies owed and paid on the employer's account have been properly credited and accounted for, and the field staff, which has the duty to collect the outstanding monies owed by employer. I am also in charge of and have custody and control over all business records relating to employer's accounts with the Trust Funds, including maintaining copies of all written agreements which establish the basis for contributions by employers to the Trust Funds. Based on the foregoing, I have firsthand knowledge and I am familiar with all business records maintained by the Trust Funds and I am familiar with the establishment and operation of CLTF, and the Trust Funds.

5. [TRUST FUNDS] The Trust Funds are each express trusts and were created by written agreements and are meant to be employee benefit plans within the meaning of the Employee Retirement Income Security Act (ERISA) § 3(3), 29 U.S.C.

§ 1002(3) and multi-employer plans within the meaning of ERISA § 3(37)(A), 29 U.S.C. § 1002(37)(A). The Trust Funds are jointly-managed pursuant to the Labor Management Relations Act (LMRA) § 302(c)(5), 29 U.S.C. § 186(c)(5). The Plaintiff's principal place of business is in, and the Trust Funds are administered in the County of Los Angeles, State of California.

6. [UNION] The Southern California District Council of Laborers and its affiliated Local Unions (Union) was and is a labor organization representing employees in industries affecting commerce. The Trust Funds are established and jointly managed pursuant to collective bargaining agreements between the Union and multi-employer associations in the construction industry.

7. [RECORDS] Employer files are maintained by CLTF and PSWA on all employers signatory to labor agreements with the Union. CLTF and PSWA maintain those accounts on behalf of the Trust Funds. The employer file customarily contains the originals and/or copies of any written collective bargaining agreement between the employer and the Union, the originals and/or copies of monthly reports submitted by the employer to the Trust Funds (showing identities of employees, hours worked and contributions due), the originals and/or copies of correspondence regarding the employer, a record of claims made by employees evidencing hours worked by employees which were not properly reported and/or paid by the employer, a copy of any audit conducted on the employer's business records and where the employer has failed to pay amounts that are due, a statement of the employer's delinquent amounts, and copies of the employer's business records if copies were obtained from the employer at the time of the audit or sent to the Trust Funds by the employer. I have reviewed the employer files maintained by CLTF and PSWA on behalf of Defendant, Morrow-Meadows Corporation ("Employer"), and my testimony below is based on that review of the records.

8. [AGREEMENTS] The records of the Employer show that it signed a "Short Form" Agreement in 1987. A copy of that Short Form Agreement is **Exhibit 1** here. That Short Form Agreement incorporates the Master Labor Agreements (MLA) of the Union. A copy of the current MLA for 2015-2018 is **Exhibit 4** here. CLTF has no record of termination or expiration of the Employer's agreements with the Union.

9. [TRUST AGREEMENTS] The MLA, in turn, adopts and incorporates the terms and conditions of the various Trust Agreements of the Trust. Those collective bargaining agreements with the Union, including the MLA, together with the Trust Agreements, will hereinafter collectively referred to as "Agreements." Excerpts from those Trust Agreements, relating to employer audits are attached as the following exhibits:

**7** Laborers Health and Welfare Trust Fund For Southern California
**8** Construction Laborers Pension Trust for Southern California
**9** Construction Laborers Vacation Trust for Southern California
**10** Laborers Training and Re-Training Trust Fund for Southern California
**12** Center for Contract Compliance
**13** Laborers Contract Administration Trust Fund for Southern California

10. [CONTRIBUTIONS] The Agreements obligate the Employer to pay fringe benefit contributions at the rates set forth in the Agreements "for each hour worked or paid for on all classifications contained in this Agreement." ("Covered Work"). This is among the obligations which my office is charged with monitoring and enforcing.

11. [SUBCONTRACTING] Under the terms of the MLA, employers, including the Employer, agree to subcontract Covered Work only to entities that are signatory to a collective bargaining agreement with the Union. For a violation of this

clause, the MLA establishes damages measured by the fringe benefit contributions which would have been paid if the work was done by a subcontractor signatory with the Union, including interest, liquidated damages and attorney fees. My office is also charged with monitoring and enforcing this provision, as it relates to damages payable to the Trust Funds.

12. [AUDIT AUTHORITY] Article XXV.J of the MLA (Ex. 4) provides that:

> "All employees shall be covered by this Agreement and the provisions applicable to Trust Funds. The Trustees shall have authority to audit Contractor records to determine the appropriate contributions and shall have specific authority to examine the Contractor's records, including but not limited to all payroll records (including certified payroll records, electronic payroll records, and all records reflecting payments to trust funds other than the Laborer Trust Funds of Southern California Federal W-2 Forms, Forms 1099 and 1096, Quarterly State Tax returns, and time cards), all cash disbursement ledgers, all canceled checks, check registers, invoices and bank checking account statements, the scope of work portion of all contracts and subcontracts between general contractors and subcontractors. If requested by the Trusts, the Contractor shall provide payroll breakdown by job, and shall provide the job location, legal description of the jobsite property if known, the owner of job location, the name and address of the entity for which the Contractor is working, the contact telephone number for the job, the names and social security numbers of the employees working on the job, the number of hours worked by each employee on the job, all preliminary notices, mechanic liens and stop notices on the job, other relevant job location information requested by the Trusts and certification of workers compensation coverage. The Trustees may file suit to enforce this obligation, and, if successful, shall recover their attorneys' fees and costs, whether or not the audit reveals a delinquency."

The Audit Department of CLTF conducts audits of employers pursuant to this provision. As stated in the MLA, the audit is to cover "All" payroll and other records, not just those which the employer deems relevant. In order to determine which is "Covered Work," the auditor needs to review "All" such records, and to compare the different sources of data against the hours reported, to discover any omissions or discrepancies.

13. [AUDIT REQUEST] Pursuant to this authority in the Agreements, CLTF requested an audit of the books and records of the Employer for the period of September 2013 through January 2016 ("Audit Period").

14. [AUDIT RESPONSE] In response to the audit request, the Employer provided records as to its subcontractors, and payroll records as to the one employee (Eric Chew) it contends is the only Laborer covered by the MLA. The Employer refused to provide payroll records as to any other employees, which it contends were "assigned" to other crafts.

15. [PARTIAL AUDIT] Based on the limited records provided, the auditor found that $3,782.76 contributions for work performed or paid to Eric Chew, and $49,509.03 contributions for subcontracting damages, are due for the Audit Period. On May 19, 2016, CLTF sent those audit findings, based on the records produced so far, to the Employer. A copy of those findings, as sent to the Employer is **Exhibit 36** here (Partial Audit). While we have not previously issued a partial audit for *this* Employer, the issuance of partial audits pending full findings is a regular practice of our office, often upon advice of counsel.

16. [RESPONSE] The letter of May 19, 2016 (Ex. 4) requests the "balance of payroll not yet reviewed from September 1, 2013-Present." The Employer did not provide those additional records requested. On June 6, 2016, counsel for the Employer responded to the auditor, contesting the findings of the partial audit, and refusing to provide the full records requested. A copy of that June 6, 2016 letter is **Exhibit 20** here.

17. [FULL AUDIT REFUSED] By this time, the matter had been referred to counsel for legal action. Our attorneys responded to the letter from counsel for the

Employer. Our office was copied with the ensuing exchange of correspondence (Exhibits 23-29). From this exchange, I understand that the Employer offered to provide reports sent to other trust funds, without employee information, but refused to provide any payroll, other than for Eric Chew. Without the full employee information in reports to other trust funds, and without full payroll, our auditors have no basis to determine whether any Covered Work was performed by those employees, and whether contributions have indeed been paid, as to each particular employee, to other trust funds (as claimed by the Employer).

18. [DOCUMENTS NEEDED] The documents our auditors require, in order to complete the audit, are:

A. All payroll and employee documents during the Audit Period including, but not limited to, Employer's payroll journals, employees earning records, certified payrolls, payroll check books and stubs, canceled payroll checks, payroll time cards, state and federal payroll tax returns, labor distribution journals, any other documents reflecting the number of hours which Employer's employees worked, their names, social security numbers, addresses, job classifications and identification of the projects on which the employees performed their work, for all employees.

B. Scope of work provisions in the Employer's contracts or subcontracts with its customers, in which work was performed by employees of the Employer during the Audit Period.

C. Invoices to customers, and Schedule of Values (such as AIA Document G703[tm] ) of the Employer for work performed by employees of the Employer during the Audit Period.

C. All collective bargaining agreements between Employer and any trade union in effect at any time during the Audit Period.

D. All reports or statements submitted to any employee benefit plan, and a

copy of the check(s) to such plan(s), for its Employees for work performed during the Audit Period.

19. The above must be provided in unredacted form in order to be useful. CLTF, as agent for the Trust Funds, is already bound to maintain privacy of individual employee information.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 22 day of February 2017, at El Monte, California.

RICHARD QUEVEDO



314944v1

# INDEX OF EXHIBITS


| Ex. No. | Description | Page No. |
|---|---|---|
| | COLLECTIVE BARGAINING AGREEMENTS | |
| 1 | Short Form Agreement | 11 |
| 4 | Master Labor Agreement 2015-2018 | 14 |
| | TRUST AGREEMENT EXCERPTS | |
| 7 | Laborers Health and Welfare Trust Fund For Southern California | 85 |
| 8 | Construction Laborers Pension Trust for Southern California | 90 |
| 9 | Construction Laborers Vacation Trust for Southern California | 93 |
| 10 | Laborers Training and Re-Training Trust Fund for Southern California | 96 |
| 12 | Center for Contract Compliance | 99 |
| 13 | Laborers Contract Administration Trust Fund for Southern California | 101 |
| | CORRESPONDENCE | |
| 20 | Letter David McLeod to CLTF dated June 6, 2016 | 105 |
| | AUDITS | |
| 36 | Partial Audit for Sep. 2013 – Jan. 2016 dated May 19, 2016 | 106 |