ALEXANDER B. CVITAN (SBN 81746)
Email: alc@rac-law.com
J. DAVID SACKMAN (SBN 106703)
Email: jds@rac-law.com
MARSHA M. HAMASAKI (SBN 102720),
Email: marshah@rac-law.com, Members of
REICH, ADELL & CVITAN, A Professional Law Corporation
3550 Wilshire Boulevard, Suite 2000
Los Angeles, California 90010-2421
Telephone: (213) 386-3860, Facsimile: (213) 386-5583

Attorneys for Plaintiff Construction Laborers Trust Funds for Southern California Administrative Co.

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

CONSTRUCTION LABORERS TRUST FUNDS FOR SOUTHERN CALIFORNIA ADMINISTRATIVE COMPANY, a Delaware limited liability company,

Plaintiff,

vs.

MORROW-MEADOWS CORPORATION, a California corporation; AMERICAN CONTRACTORS INDEMNITY COMPANY, a California corporation,

Defendants.

Case No: 2:16-cv-07454-MWF-AS

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT MORROW-MEADOWS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Hearing
Date: March 27, 2017
Time: 10:00 a.m.
Place: Courtroom 5A, 5th Floor
350 W. 1st Street
Los Angeles, California 90012

# I. INTRODUCTION

This action was brought to complete an audit of an employer[1/] by employee benefit funds[2/] (Second Claim), collect the delinquent contributions and damages found so far, plus whatever may be found in the audit (First Claim), and to recover part of those contributions from the employer's license bond (Third Claim). Plaintiff brought a motion for partial summary judgment as to the Second Claim – for an injunction ordering the Employer to produce the documents needed to complete the audit. The Employer here brings a cross-motion for partial summary judgment as to the Second Claim – seeking to prevent the audit from being completed, based on speculation as to what the Trust Funds will claim once they complete the audit.

The Employer speculates that Plaintiff will claim that it owes contributions for work performed by employees who the Employer contends are covered by separate agreements with locals of the International Brotherhood of Electrical Workers (IBEW), and for which it alleges it already paid contributions to another set of benefit funds (IBEW Funds). Since no such claim has yet been made, there is no case or controversy for this Court to adjudicate in the Employer's motion.

Since the Employer refuses to provide the records necessary to verify its factual assertions in this motion, Plaintiff "cannot present facts essential to justify its opposition," the Employer's motion must therefore be denied or deferred, under Fed. R. Civ. P. 56(d).

---

1/ Defendant Morrow-Meadows Corporation (Employer).

2/ Laborers Health And Welfare Trust Fund For Southern California, Construction Laborers Pension Trust For Southern California, Construction Laborers Vacation Trust For Southern California, Laborers Training And Re-Training Trust Fund For Southern California, Fund For Construction Industry Advancement, Center For Contract Compliance, Laborers Contract Administration Trust Fund For Southern California, Laborers' Trusts Administrative Trust Fund For Southern California, And Southern California Partnership For Jobs (collectively "Laborers Trusts").

## II. SUMMARY OF FACTS

The relevant facts have been stated at length in Plaintiff's cross-motion, particularly in our Proposed Statement of Uncontroverted Facts ("PSUF" Docket No. 22-2), which we incorporate by reference. Our responses and objections to the Employer's Proposed Statement of Uncontroverted Facts ("DSUF" Docket No. 28) are stated in our accompanying Statement of Genuine Disputes of Material Fact. Here, we will focus on the facts relevant to the issues the Employer purports to raise in its cross-motion.[3/]

Defendant Employer is signatory to collective bargaining agreements with the Southern California District Council of Laborers and its Affiliated Local Unions (Laborers Union) which require the Employer to pay contributions to the Laborers Trusts "for each hour worked or paid for all classifications contained in" the Laborers Master Labor Agreement (MLA). [Declaration of Richard Quevedo (Quevedo Decl) ¶ 8; *see, e.g.*, MLA (Ex. 4) Art. XIX.C.1 at p. 41].[4/]

The Employer also signed collective bargaining agreements with various locals of the IBEW. Those agreements with the IBEW locals require contributions to the

---

3/ The Employer gives the same exhibits different numbers than that of Plaintiff, different from the numbering in the parties' disclosures, and even different from the same exhibits in its own declarations. We have therefore prepared an Index of Exhibits, attached to the Opposition to this cross-motion, for the Court's reference. Here, we will cite to Plaintiff's exhibits where available. Page citations are to the internal pagination of the document, where available.

4/ The Employer claims that the MLA requires contributions to the Laborers Trusts only when "covered work is duly assigned and performed by Laborers." There is no such language in the MLA. This is only one of many misquotes of the relevant documents in the Employer's papers. The Court should refer to the actual documents, rather than rely on the Employer's representations of what those documents say. The "Short Form" Agreement originally signed by the Employer is Exhibit 1, and the current MLA for 2015-2018 is Exhibit 4 to the Quevedo Declaration. [Docket No.s 24-1 and 24-2, respectively].

IBEW Funds for work covered under those agreements. [DSUF ¶¶ 7 and 10].

The provision of the MLA most important to this both cross-motions is Article XXV.J, which provides that:

> "The Trustees shall have authority to audit Contractor records to determine the appropriate contributions and shall have specific authority to examine the Contractor's records, including but not limited to **all payroll records** (including certified payroll records, electronic payroll records, and **all records reflecting payments to trust funds other than the Laborer Trust Funds of Southern California** Federal W-2 Forms, Forms 1099 and 1096, Quarterly State Tax returns, and time cards), all cash disbursement ledgers, all canceled checks, check registers, invoices and bank checking account statements, the **scope of work portion of all contracts and subcontracts** between general contractors and subcontractors. If requested by the Trusts, the Contractor shall provide payroll breakdown by job, and shall provide the job location, legal description of the jobsite property if known, the owner of job location, the name and address of the entity for which the Contractor is working, the contact telephone number for the job, the **names and social security numbers of the employees working on the job**, the number of hours worked by each employee on the job, all preliminary notices, mechanic liens and stop notices on the job, other relevant job location information requested by the Trusts and certification of workers compensation coverage. **The Trustees may file suit to enforce this obligation, and, if successful, shall recover their attorneys' fees and costs, whether or not the audit reveals a delinquency**. [MLA (Ex. 4) at p. 54, *emphasis added*].

Plaintiff requested an audit of the books and records of the Employer for the period of September 2013 through January 2016 ("Audit Period"). [DSUF ¶ 30]. In response to the audit request, the Employer provided records as to its subcontractors, and payroll records as to the one employee (Eric Chew) it contends is the only Laborer covered by the MLA. [DSUF ¶¶ 31-32]. The Employer refused to provide payroll records as to any other employees. [Quevedo Decl ¶¶ 16-17; Declaration of J. David Sackman, Docket No. 25 (Sackman Decl) ¶¶ 2-4; Ex.s 23-29]. As it did then, the Employer asserts in this Motion that all of the other employees were properly classified and reported to the IBEW Funds. [DSUF ¶¶ 1-4]. But it refuses to provide Plaintiff's auditor access to the records to verify its factual assertions. [Quevedo Decl ¶¶ 16-17; Sackman Decl ¶¶ 2-4; Ex.s 23-29].

After a lengthy exchange between counsel (Sackman Decl Ex.s 23-29) the

Employer stuck to this position.[5/] It did offer to allow a "review a summary of labor hours worked from its accounting system (without employee information), Union Reports and check copies for what was reported and paid to the Union(s)" but it will not "provide payroll records for employees that are not laborers," which, according to the Employer, is all of its 1,300 employees except Eric Chew. [Sackman Decl Ex. 27]. The lack of employee information, however, makes this offer useless, even to check if contributions were really paid to the IBEW Funds as alleged. Without employee information (in both payroll and the reports) there is no way to match up particular employees with the reports to the IBEW Funds. [Quevedo Decl ¶ 17]. Indeed, employers have used this tactic to play off one set of trust funds against another, in order to avoid paying any contributions *at all* for the employees at issue. [Supplemental Declaration of J. David Sackman in Opposition to Employer's Motion (Supp Sackman Decl) ¶ 3]. It is for this reason that the MLA has specific language requiring employers to provide "all records reflecting payments to trust funds other than the Laborer Trust Funds of Southern California." [MLA Art. XXV.J; Supp Sackman Decl ¶ 3].

In this Motion, the Employer discusses at length the jurisdictional dispute mechanisms between different crafts in the building trades. As discussed below, this is not at issue and wholly irrelevant to the cross-motions before the Court. Even as a factual matter, the Employer misstates these procedures. [*See* Plaintiff's Statement of Genuine Disputes of Material Facts (PSGDMF) submitted with this Opposition, at ¶¶ 5, 15, 22, 25, 28, 29 and 40].

The most important fact which the Employer omits is that, under Art. II § 1 of the Plan for the Settlement of Jurisdictional Disputes in the Construction Industry

---

5/ The Employer also asserts that Plaintiff refused to settle the findings of the Partial Audit (Quevedo Ex. 36). Of course, all such settlement discussions are privileged, and have no bearing on either of these cross-motions. Those findings are the subject of the First Claim in Plaintiff's Complaint, which is not at issue in these cross-motions.

(Plan), in order to process a jurisdictional dispute under the Plan, "all parties to the dispute must be stipulated to the Plan." [Declaration of Richard Reed (Reed Decl) Ex. C, Docket No. 34-6 at p. 4, *emphasis added*].[6/] While there is no dispute that the IBEW and Laborers Union are "stipulated" to the Plan, there is no evidence that the Employer is. More important, there can be no evidence that the Laborers Trusts or the Plaintiff are. For this reason, the Plan Administrator has consistently rejected attempts to join the Laborers Trusts to such jurisdictional disputes, for bringing lawsuits to collect contributions. [Supp Sackman Decl ¶ 5; Ex. 30].

Besides refusing to allow Plaintiff's auditor to verify which employees did what work, the Employer here has provided no evidence that it has made the Laborers Union aware of any of its purported "assignments" of work. Nor has it provided any evidence of any past or pending jurisdictional dispute involving the Employer.

## III. ARGUMENT

### A. THIS MOTION PRESENTS NO JUSTICIABLE CONTROVERSY

"It goes without saying that those who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). Mere "speculation is insufficient to establish the existence of a present, live controversy." Id. at 105, *quoting Ashcroft v. Mattis*, 431 U.S. 171, 172-173 n. 2, 97 S.Ct. 1739, 52 L.Ed.2d 219 (1977). A party "does not necessarily have standing to seek prospective relief such as a declaratory judgment" for conduct which has not yet occurred, even if similar

---

6/ Because the Plan (Ex. C to the Reed Decl) was filed in 9 parts with this Court, we will cite to the Docket No. and page number of the court filing, rather than internal page numbers, for this document.

conduct occurred in the past. Mayfield v. United States, 599 F.3d 964, 969 (9th Cir. 2010).

Here, the Employer's motion is based entirely on speculation as to what Plaintiff may claim, in an audit which the Employer refuses to allow. Other than the one employee which it acknowledges is a "laborer," the Employer refuses to allow an audit of its supposedly 1,300 employees, who it claims are all doing work within the jurisdiction of the IBEW. The Employer is essentially asking for a declaratory judgment as to a claim which may or may not be made in the future.

There is no evidence before the Court as to what work these employees actually did, whether contributions were indeed made to the IBEW Funds, except the self-serving declarations of the Employer. As long as the Employer blocks the attempts by the Plaintiff to complete the audit and verify these facts, the issues arising from those speculative facts cannot be adjudicated by this Court.

## B. THE EMPLOYER IS OBLIGATED TO PROVIDE RECORDS AS TO ALL EMPLOYEES, NOT JUST THOSE IT DEEMS COVERED

Contrary to the misleading and incorrect quotations by the Employer, the MLA authorizes Plaintiff to audit "all payroll records," not just those the Employer believes are "appropriate." [MLA (Ex. 4) Art. XXV.J at p. 54, *emphasis added*]. As we discussed in support of our motion, the Supreme Court has rejected the same argument the Employer makes here, trying to limit the audit to the employees it deems "appropriate," based on "the elementary principle that for an auditor to verify a certain selection decision, he must refer to a universe broader than the selection itself." *Central States, Southeast and Southwest Areas Pension Fund v. Central Transport Inc.*, 472 U.S. 559, 567, 105 S.Ct. 2833, 86 L.Ed.2d 447 (1985). *See also*, *New York State Teamsters Conference Pension and Retirement Fund v. Boening Bros., Inc.*, 92 F.3d 127, 134 (2nd Cir. 1996) ("production of payroll records for all employees,

including those employees not covered by the CBA, may legitimately be required to ensure that an employer's determination of employees' covered or noncovered status is correct.")

The Employer's offer to allow the auditor to only "review a summary of labor hours worked from its accounting system (without employee information), Union Reports and check copies for what was reported and paid to the Union(s)" but without "payroll records for employees that are not laborers," (Sackman Decl Ex. 27) is useless. Without employee information (in both payroll and the reports) there is no way to match up particular employees with the reports to the IBEW Funds. [Quevedo Decl ¶ 17]. Without this information, we could not even check if the Employer is telling the IBEW Funds a mirror image of this same story, in order to avoid paying contributions altogether for these employees. [Supp Sackman Decl ¶ 3].[7/]

In addition, we need access to the records, such as Scope of Work provisions in the Employer's contracts or subcontracts, to determine what work these employees were actually doing. [Quevedo Decl ¶ 18]. The issues the Employer seeks to raise as to which agreement covers the work in question can only be adjudicated by this Court once we have the evidence as to what that work was. There is simply no defense to the full audit requested here.

## C. A HYPOTHETICAL JURISDICTIONAL DISPUTE CANNOT BLOCK THIS AUDIT

The Employer claims that the alleged failure to invoke jurisdictional dispute mechanisms bar Plaintiff's Second Claim for an audit. But none of the cases cited by

---

7/ Nor is there any merit to withholding this information on the basis of privacy interests. As we discussed in our Motion, Plaintiff is already required by law "to protect the employees' personal information from public disclosure." *Los Angeles Unified Sch. Dist. v. Trustees of the S. California IBEW-NECA Pension Plan*, 187 Cal. App. 4th 621, 632, 114 Cal. Rptr. 3d 440 (2nd Dist. 2010).

the Employer involve claims to obtain an audit; rather, all are claims for contributions for work admittedly covered by other agreements, usually after an audit has already been performed. For example, in *Carpenters Fringe Benefit Funds of Ill. v. McKenzie Engineering*, 217 F.3d 578, 582-583 (8th Cir. 2000), the Court confirmed that "ERISA plan trustees may audit an employer's payroll records to verify that required contributions have been paid" and only reached the jurisdictional dispute issues *after* those trust funds "audited McKenzie's payroll and related records."

The only decision we are aware of which evens addresses the issue of an audit in the face of an alleged jurisdictional dispute is an unpublished decision by the Ninth Circuit - *Constr. Laborers Trust Funds for So. California Admin. Co. v. Martinez Landscape Co.*, 218 F. App'x 631, 2007 WL 148771 (9th Cir. 2007).[8/] The Ninth Circuit there reversed the district court for granting summary judgment before allowing for discovery as to the facts of the work involved, which could "refute Martinez's representation that work was assigned to the Pipe Fitters for the period" in dispute.[9/]

Even if the Employer's fears come true, and the Laborers Trusts claim contributions for work allegedly also covered by IBEW agreements, that would not make this a jurisdictional dispute over the *assignment* of work *to be done in the future*, but merely a contract claim for work *already performed*. The Employer argues that this distinction is purely "semantic." But that "semantic" distinction comes from the

---

8/ A copy of that decision is attached here.

9/ The *Martinez* case, as with many of the cases cited by the Employer, involved a Project Labor Agreement ("PLA" or "PSA"), in which the agreement specifically provided that contributions were only due to a single set of benefit funds which were the "appropriate" funds according to the "assignment" of work. *See* Supp Sackman Decl ¶¶ 4-6. That language is not in the agreements here, contrary to the Employer's assertion otherwise. *See* PSGDMF ¶¶ 14-15. This is among the reasons those decisions can be distinguished. *See also*, *Rhode Island Carpenters Annuity Fund v. Trevi Icos Corp.*, 474 F. Supp. 2d 326, 333 (D.R.I. 2007) ("compelling weight of authority" is "contrary to *McKenzie*").

Plan itself:

> "The Arbitrator is not authorized to award back pay or any other damages for a misassignment of work. Nor may any party to this Plan bring an independent action for back pay or any other damages, based upon a decision of an Arbitrator." [Plan Art. V § 10, Docket No, 34-6 at p. 12].

Finally, as we pointed out in our Motion, the U.S. Supreme Court has already decided that trust funds do not have to exhaust contractual remedies before obtaining an audit of an employer, or even collecting contributions after the audit. *Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364, 104 S.Ct. 1844, 80 L.Ed.2d 366 (1984). There is no cogent basis for distinguishing *Schneider* in this case, especially before the audit can even be completed.

D. THE EMPLOYER'S MOTION MUST BE DENIED OR DEFERRED UNDER RULE 56(d)

Under Fed. R. Civ. P. 56(d) (formerly 56(f)), "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: "(1) defer considering the motion or deny it; "(2) allow time to obtain affidavits or declarations or to take discovery; or "(3) issue any other appropriate order."

Here, there is no dispute that the Employer refuses to allow a full audit, in order to tests its assertions as to the assignment, type of work done and contributions made as to all but one of its supposedly 1,300 employees. [Quevedo Decl ¶¶ 17-18; Sackman Decl Ex.s 23-29]. Not only is it true that Plaintiff "cannot present facts essential to justify its opposition," the Employer has affirmatively refused to provide the information as to these factual contentions. That is the subject of our cross-motion.

It would be "an abuse of discretion for the district court to decide the summary judgment motion before granting" the cross-motion here for an audit. *Burlington N. Santa Fe R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767, 774 (9th Cir. 2003). The "Supreme Court has restated the rule as requiring, rather than merely permitting, discovery 'where the nonmoving party has not had the opportunity to discover information that is essential to its opposition.'" *Metabolife Intern., Inc. v. Wornick*, 264 F.3d 832, 846 ( 9th Cir. 2001) (*emphasis added*), *quoting*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n. 5, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). This is precisely the issue faced in the *Martinez Landscape* case, in which the district court was reversed for entering summary judgment before discovery or an audit.

## IV. CONCLUSION

The Employer's motion must be denied, or at least deferred until after the audit is completed. The Plaintiff's motion for an audit should be granted. Only after the audit is completed will it be possible, if at all, to address the issues raised by the Employer in this cross-motion.

Respectfully Submitted,

Dated: March 6, 2017

ALEXANDER B. CVITAN,
J. DAVID SACKMAN, and
MARSHA M. HAMASAKI, Members of
REICH, ADELL & CVITAN,
A Professional Law Corporation

By: /s/ J. David Sackman
J. DAVID SACKMAN
Attorneys for Plaintiff