ALEXANDER B. CVITAN (SBN 81746)
Email: alc@rac-law.com
J. DAVID SACKMAN (SBN 106703)
Email: jds@rac-law.com
MARSHA M. HAMASAKI (SBN 102720),
Email: marshah@rac-law.com, Members of
REICH, ADELL & CVITAN, A Professional Law Corporation
3550 Wilshire Boulevard, Suite 2000
Los Angeles, California 90010-2421
Telephone: (213) 386-3860, Facsimile: (213) 386-5583

Attorneys for Plaintiff Construction Laborers Trust Funds for Southern California Administrative Co.

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

CONSTRUCTION LABORERS TRUST FUNDS FOR SOUTHERN CALIFORNIA ADMINISTRATIVE COMPANY, a Delaware limited liability company,

Plaintiff,

vs.

MORROW-MEADOWS CORPORATION, a California corporation; AMERICAN CONTRACTORS INDEMNITY COMPANY, a California corporation,

Defendants.

Case No: 2:16-cv-07454-MWF-AS

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Hearing
Date: March 27, 2017
Time: 10:00 a.m.
Place: Courtroom 5A, 5th Floor
350 W. 1st Street
Los Angeles, California 90012

# I. INTRODUCTION

In these cross-motions for partial summary judgment on Plaintiff's[1/] Second Claim for relief to complete an audit, the Defendant[2/] Employer seems to be arguing from a completely different set of agreements than those which all parties agree apply. The Employer repeatedly relies on language which does not exist in those agreements, or changes the language which does exist to suit its argument. The law is clear that the obligation to contribute to employee benefit plans, at issue here, must be based on written documents, and that parol evidence contrary to those written documents is not allowed.

Besides making up its own contract provisions, the Employer's opposition relies on speculation as to what the audit will find, and what claims the Plaintiff will make based on the audit. The Employer makes up a jurisdictional dispute which does not exist, and may never exist. It argues that Plaintiff is barred from auditing its records because of this hypothetical jurisdictional dispute.

In this Reply, we will endeavor to bring the discussion back to the actual language of the documents, and the actual dispute before the Court. There is no dispute as to the real documents and facts, and we submit that the contract provisions and the law is clear that the audit sought must be ordered.[3/]

---

1/ Construction Laborers Trust Funds for Southern California Administrative Company (CLTF), as fiduciary and agent for various employee benefit plans (Laborers Trusts).

2/ Morrow –Meadows Corporation (Employer). Defendant American Contractors Indemnity Company is named as to the Third Claim only, which is not at issue here.

3/ We note that none of the Employer's papers in either cross-motion comply with Local Rule L.R. 5-4.3.1. Those papers may all be stricken and not considered on that basis alone.

## II. THERE ARE NO GENUINE ISSUES OF MATERIAL FACT

Rather than responding, in accordance with Local Rule 56-2 and Fed. R. Civ. P. 56(c), to Plaintiff's Statement of Uncontroverted Facts ("PSUF" Docket No. 22-2), the Employer responds by stating as "undisputed" completely different matters, which are neither supported in the record or even relevant. ["DSGI" Docket No. 40]. Most of these assertions are based on contract language which does not exist, or which has been altered to suit the Employer's argument.

We focus here on the material facts and on the actual language of the documents, which are not in dispute.[4/] Sticking to the actual, rather than imagined, language is particularly important as to the obligation to contribute to employee benefit plans, which by law must be based on written documents,[5/] which may not be contradicted by parol evidence. *See Trustees of S. Cal. IBEW-NECA Pension Trust Fund v. Flores*, 519 F.3d 1045, 1048 (9th Cir. 2008) (reversing district court for "considering extrinsic evidence that contradicted" the "unambiguous terms" of the written agreement).

The most egregious misstatement by the Employer is its repeated assertion that the applicable collective bargaining agreement[6/] requires contributions to the Laborers Trusts only when "covered work is duly assigned and performed by Laborers." [*See,*

---

4/ We will refer to the evidence submitted in support of and opposition to both cross-motions. Again, we attach an Index of Exhibits as a guide.

5/ *See* Labor Management Relations Act (LMRA) § 302(c)(5)(B), 29 U.S.C. § 186(c)(5)(B) (an exception to criminal liability); Employee Retirement Income Security Act (ERISA) § 402(b)(4), 29 U.S.C. § 1102(b)(4).

6/ This is the current Master Labor Agreement (MLA) with the Southern California District Council of Laborers (Laborers Union), which is Exhibit 4 to the Declaration of Richard Quevedo (Quevedo Decl) (Docket No. 24-1), incorporated by the "Short Form" Agreement originally signed by the Employer (Ex. 1, Docket No. 24-1).

*e.g.*, DSGI ¶ 8]. **There is no such language in the MLA**. What the MLA *does* say is that the Employer is required to pay contributions to the Laborers Trusts "for each hour worked or paid for all classifications contained in" the MLA. [Quevedo Decl) ¶ 8].[7/] The obligation to contribute in this agreement is based on the type of work performed, not the Employer's assignment of that work. The purpose of the audit, under these provisions, is to discover what hours "worked or paid for" were performed within those classifications covered by the MLA.

Another important misstatement by the Employer is that "the MLA limit Plaintiff's power to audit" its records. [*See*, e.g., DSGI ¶ 10]. The opposite is true. The relevant provision gives Plaintiff authority to audit the Employer's records "*including but not limited to*" a long list of specific records. [MLA Art. XXV.J at p. 54]. Among the items on this list in the MLA are "all payroll records" and "all records reflecting payments to trust funds other than the Laborer Trust Funds of Southern California." [Id. *emphasis added*].

Despite the specific reference in the MLA authorizing Plaintiff to audit "all records reflecting payments to trust funds other " than the Laborers Trusts, the Employer asserts that it is "undisputed" that it reported and paid all required contributions to the International Brotherhood of Electrical Workers (IBEW) Funds, so that it is not necessary to produce those reports. [*See, e.g.*, DSGI ¶ 16]. But the evidence it presents only shows that "benefit reports and contributions have been submitted and paid when due" to the IBEW Funds. [Declaration of Joanne Keller, Docket No. 30 (Keller Decl) ¶ 8]. This does not tell us whether it failed to report hours or employees to the IBEW Funds. Indeed, it is "not uncommon for an employer to tell one set of trust funds that it had made contributions for certain employees to

---

7/ This same phrase is repeated as to the contribution requirement for each of the various Laborers Trusts. *See* MLA (Ex. 4) Art. XIX.C.1 at p. 41 (Health); Art. XIX.D.1 at p. 42 (Pension); XIX.E.1 at p. 43 (Vacation); XIX.F.1 at p. 43 (Training); XX.A at p. 49 (FCIA); XXI.A at p. 50 (CATF); Art. XXII.1 at p. 51 (CCC); XXIII.1 at p. 51 (LTATF).

another set of trust funds, and then to tell those other set of trust funds the reverse, in order to avoid paying contributions to any trust funds for those employees." [Supplemental Declaration of J. David Sackman, Docket No. 38 (Supp Sackman Decl) ¶ 3]. The only way to truly verify that this is not happening here is to compare the unredacted full payroll with the unredacted reports to the IBEW Funds. [Id.; Quevedo Decl ¶¶ 17-19].

While we do not believe it is material, the Employer misstates facts regarding the "assignment" of work and the jurisdictional dispute mechanisms which it claims the Plaintiff (or the Laborers Union) must exhaust. As to "assignment," the Employer claims the MLA gives it the right to assign work to the various trades. [*See, e.g.*, DSGI ¶ 16]. To the contrary, the MLA requires the Employer to "assign the work in accordance with existing intercraft agreements. In the absence of such intercraft agreements, then past practice or the prevailing practice in the locality shall apply." [MLA Art. IV.E at p. 19].[8/]

Central to the Employer's argument is that this is a jurisdictional dispute between the IBEW and the Laborers Union, and that dispute must first be resolved through the procedures of the Plan for the Settlement of Jurisdictional Disputes in the Construction Industry (Plan).[9/] But the Plan provides that all parties, including the employer or employer association involved, must be "stipulated" to the Plan in order to invoke its procedures. [*See* Art. II of the Plan at Docket No. 34-6, page 4; Art. III of the Procedural Rules of the Plan at Docket No. 34-5, page 7.] There is no evidence that Defendant Employer is "stipulated" to the Plan. More important, the CLTF and

---

8/ We cannot speak to the IBEW Agreements, which we do not believe are relevant here. To the extent they are considered, those documents speak for themselves. The Employer has provided no evidence that it has made the Laborers Union aware of any of its purported "assignments" of work. Nor has it provided any evidence of any past or pending jurisdictional dispute involving the Employer.

9/ The Employer reproduces the Plan in nine parts, from Docket No.s 34-5 through 34-13. As to the Plan, we will cite the page numbers as filed with the Court.

Laborers Trusts are not "stipulated" to the Plan, and the Plan Administrator has refused to process complaints that lawsuits by CLTF to collect contributions are subject to the Plan procedures. [Sackman Decl ¶ 5; Ex. 30].

The only provision of the Plan which may be material here is Art. V § 10, which prohibits the award of "back pay or any other damages for a misassignment of work" and prevents any party to those proceedings from bringing "an independent action for back pay or any other damages, based upon a decision" in those proceedings. [Docket No. 34-6 at p. 12]. So, exhaustion of these proceedings for a claim of benefit contributions is not only not required, it is absolutely *prohibited* by the Plan itself.

## III. ARGUMENT

### A. THE DOCUMENTS OFFERED BY THE EMPLOYER ARE INSUFFICIENT TO VERIFY PROPER CONTRIBUTIONS

The Employer claims that it has offered to provide access to records sufficient for this audit. What it actually offered to produce is:

> "Specifically, it will allow your client to review a summary of labor hours worked from its accounting system (**without employee information**), Union Reports and check copies for what was reported and paid to the Union(s). It will **not provide payroll records for employees that are not laborers** and who were working under the IBEW Agreement." [Sackman Decl Ex. 27, *emphasis added*].

This is less than the contractual provision requiring the Employer to provide access to its records "including, but <u>not limited to</u>, <u>all</u> payroll records," and "<u>all records</u> reflecting payments to trust funds other than the Laborer Trust Funds of Southern California" as well as "the <u>names and social security numbers</u> of the employees working on the job." [MLA (Ex. 4) Art. XXV.J at p. 54, *emphasis added*]. As we discussed in our moving brief, the Supreme Court has rejected the same

argument the Employer makes here, trying to limit the audit to the employees it deems "appropriate," rather than "a universe broader than the selection itself." Central States, Southeast and Southwest Areas Pension Fund v. Central Transport Inc., 472 U.S. 559, 567, 105 S.Ct. 2833, 86 L.Ed.2d 447 (1985). As the Second Circuit put it, "production of payroll records for all employees, including those employees not covered by the CBA, may legitimately be required to ensure that an employer's determination of employees' covered or noncovered status is correct." New York State Teamsters Conference Pension and Retirement Fund v. Boening Bros., Inc., 92 F.3d 127, 134 (2nd Cir. 1996) (*emphasis added*).

More important, this offer is useless to verify either the hours which should have been reported to the Laborers Trusts, or to even verify the claim that these hours were reported and paid to the IBEW Funds. Without employee information (in both payroll and the reports) there is no way to match up particular employees with the reports to the IBEW Funds. [Quevedo Decl ¶ 17]. Without this information, we could not even check if the Employer is telling the IBEW Funds a mirror image of this same story, in order to avoid paying contributions altogether for these employees. [Supp Sackman Decl ¶ 3]. As discussed above, the evidence proferred by the Employer in opposition to this motion only shows that it paid all contributions it reported; there is nothing to tell us whether it reported all these employees to the IBEW Funds.[10/]

The Employer seizes upon *dicta* in a footnote in Central States to argue that an audit is not appropriate "if it were really an effort by plan trustees to expand plan

---

10/ Nor is there any merit to withholding this information on the basis of privacy interests. As we discussed in our moving papers, Plaintiff is already required by law "to protect the employees' personal information from public disclosure." Los Angeles Unified Sch. Dist. v. Trustees of the S. California IBEW-NECA Pension Plan, 187 Cal. App. 4th 621, 632, 114 Cal. Rptr. 3d 440 (2nd Dist. 2010). The argument as to the quantity of documents is also a non-starter. We expect most of the records, especially payroll, to be in electronic format, which should be easily downloaded.

coverage beyond the class defined in the plan's terms or to acquire information about the employers to advance union goals." 472 U.S. 559, 571 n. 12. But, as in *Central States*, there is "no evidence" of such improper purpose, or that the audit seeks anything more than what is already contractually-required and necessary to verify that the Employer "is indeed contributing all required amounts on behalf of all covered employees." Id. The records requested, especially the "Scope of Work" provisions in the Employer's contracts or subcontracts, are needed to determine what work these employees were actually doing, and thus whether or not that work is "covered." [Quevedo Decl ¶ 18].

In a similar vein, the Employer argues the audit cannot go beyond the geographic scope of the MLA (Southern California), citing *Trustees of Michigan Regional Council of Carpenters Employee Benefits Fund, et. al. v. Exhibit Works, Inc.*, 868 F. Supp. 2d 592 (E.D. Mich 2012). But that case involved a request to audit a separate payroll in a different state (North Carolina) from the scope of the agreement (certain counties in Michigan). Judge Gee of this Court explained why this case does not apply here, in another case involving a motion by CLTF to compel an audit of a recalcitrant employer. *Construction Laborers Trust Funds for So. Cal. Admin. Co. v. Ground Service Technology, Inc.*, 13cv00414DMG, 2014 WL 12561599 (C.D. Cal. 2014):[11/]

> "First, this Court is not bound by the opinion of a Michigan district court. . . . In contrast, in *Exhibit Works*, the . . . court denied this request because the employees at issue were 'by definition ... not covered by the CBA," and the plaintiffs had not demonstrated that the employer had the potential to owe *any* contributions for work performed by those individuals." Id. *Footnotes and citations omitted.*

Here, we are looking only for evidence of work within Southern California.

---

11/ This decision was also attached to one of the correspondences from Plaintiff's attorney to the Employer's attorney. [Sackman Decl ¶ 3; Ex. 28, Docket No. 25-1 at pp. 19-41].

That is one reason we are asking for project information – so we can narrow our search to work on projects in Southern California. The certified payroll[12/] and similar "breakdown by job" information authorized by MLA Art. XXV.J and sought here, will allow us to determine which hours were worked within the geographical jurisdiction of the MLA. There is simply no excuse here to provide anything less than the full scope of records required by the MLA and necessary to verify contributions for covered work.

## B. THERE IS NO JURISDICTIONAL DISPUTE TO BAR THIS AUDIT

The Employer speculates that the audit will claim contributions for employees covered by IBEW agreements, which the Employer claims is a jurisdictional dispute which must first be resolved between the unions. As we explained in our Opposition to the Employer's cross-motion, this is not even an issue properly before the court in these cross-motions. If the Court will nevertheless (erroneously) consider this issue, then a summary of what a "jurisdictional dispute" is and isn't would be in order.

Section 10(k) of the National Labor Relations Act (NLRA), 29 U.S.C. § 160(k), gives the National Labor Relations Board ("NLRB" or "Board") the authority to determine jurisdictional disputes when "it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph (4)(D) of section 158(b) of this title," unless the parties have agreed to a "voluntary adjustment of, the dispute."[13/] The paragraph referred to (29 U.S.C. § 158(b)(4)(D)) makes it an unfair labor practice

---

12/ *See* Calif. Labor Code § 1776.

13/ In order for the Board to defer to "voluntary adjustment" among the parties, it must find that "There is a single method for the voluntary adjustment of the dispute that binds all parties" *International Union of Operating Engineers Local 4 (Mass. Bldg.-Wreckerss and Env. Remediation Assoc.*), 363 NLRB No. 17, 204 LRRM 1601 (2015). The "parties to the dispute" includes "the employer making the work assignment." Id. This Employer is not stipulated to the same "single method."

for a union to engage in conduct "forcing or requiring any employer to assign particular work to employees in a particular labor organization or in a particular trade, craft, or class rather than to employees in another labor organization or in another trade, craft, or class," (with certain exceptions).

Thus, the prerequisite for a "jurisdictional dispute" is a "finding that a party has used proscribed means, such as coercion, threats, or picketing, to force an employer to assign work to one group of employees rather than another." *In Re Int'l Union of Bricklayers & Allied Craftworkers (Altounian Builders, Inc.)*, 338 NLRB 1100, 1101, 172 LRRM 1246 (2003). But, "the mere filing of an arguably meritorious grievance is not unlawful coercion within the meaning of Section 8(b)(4)(D)." Id. Like a grievance, a lawsuit by trust funds to collect contributions due under a collective bargaining agreement cannot possibly constitute a "jurisdictional" dispute.

Coming back to the issue which is before the Court, the Employer wholly fails to distinguish the U.S. Supreme Court decision in *Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364, 104 S.Ct. 1844, 80 L.Ed.2d 366 (1984), which held that trust funds do not have to exhaust contractual remedies in a suit such as this. *None* of the cases cited by the Employer[14/] involved an attempt to obtain or complete an audit. Even as to the collection of contributions after an audit in those cases, which is not before the Court in this motion, those decisions are of questionable applicability here. *See Rhode Island Carpenters Annuity Fund v. Trevi Icos Corp.*, 474 F. Supp. 2d 326, 333 (D.R.I. 2007) ("compelling weight of authority" is "contrary to *McKenzie*"). As noted in the *Trustees of the B.A.C. Local 32* case cited by the Employer, there is a split

---

14/ *See Carpenters Fringe Benefit Funds of Ill. v. McKenzie Engineering*, 217 F.3d 578 (8th Cir. 2000); and *Cement Masons Union Local No. 592 Pension Fund v. Zappone*, 501 F.Supp.2d 714, (E.D. Pa. 2007); *Construction Laborers Trust Funds for Southern California Administrative Co., et al. v. Mission Gate Enterprises, et al.*, 2:08-cv-05998 DOC (ANx), Doc. 85 (C.D. Cal., Jan. 25, 2010); and *Trustees of the B.A.C. Local 32 Ins. Fund. v. Ohio Ceiling & Partition Co.*, 48 Fed. Appx. 188, 2002 WL 31245970 (6th Cir. 2002).

of authority as to whether double-contributions can be collected, with the Seventh[15/] and Ninth Circuits[16/] coming out contrary to the cases relied on by the Employer. It would certainly be inappropriate for this Court to attempt to address this split, when there has not even been a claim to double-contributions made.

## IV. CONCLUSION

The contract provisions and the law lead to only one result – Plaintiff's motion must be granted and Defendant's motion denied. In accordance with Art. XXV.J. of the MLA, Plaintiff "shall recover their attorneys' fees and costs, whether or not the audit reveals a delinquency." [MLA (Ex. 4) at p. 54].[17/] We have submitted a Proposed Judgment to this effect.

Respectfully Submitted,

Dated: March 13, 2017

ALEXANDER B. CVITAN,
J. DAVID SACKMAN, and
MARSHA M. HAMASAKI, Members of
REICH, ADELL & CVITAN,
A Professional Law Corporation

By: /s/ J. David Sackman
J. DAVID SACKMAN
Attorneys for Plaintiff

---

15/ *See Hutter Const. Co. v. Int'l Union of Operating Engineers Local 139*, 862 F.2d 641, 645-646 (7th Cir. 1988).

16/ *See Brogan v. Swanson*, 682 F.2d 807, 809-810 (9th Cir. 1982).

17/ This one-way fee provision cannot be used to the Employer's benefit. *See Roy Allen Slurry Seal v. Laborers Int'l Union, Local Union 1184*, 241 F.3d 1142 (9th Cir. 2001) (LMRA preempts California Civil Code § 1717).